**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MARTHA PAEZ-BASTO and**
**MASSIMILIANO CENTANNI,**

      **Plaintiffs,**

**v.**                                                                 **Case No:   6:13-cv-1955-Orl-31TBS**

**ACTING SECRETARY, DEPARTMENT**
**OF HOMELAND SECURITY,**
**DIRECTOR, CITIZENSHIP AND**
**IMMIGRATION SERVICES, DISTRICT**
**DIRECTOR, CITIZENSHIP AND**
**IMMIGRATION SERVICES, TAMPA,**
**FLORIDA, FIELD OFFICE DIRECTOR,**
**CITIZENSHIP AND IMMIGRATION**
**SERVICES, ORLANDO, FLORIDA and**
**UNITED STATES ATTORNEY'S**
**OFFICE FOR THE MIDDLE DISTRICT**
**OF FLORIDA,**

      **Defendants.**

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 23) filed by the Plaintiffs, Defendants' Response to Plaintiffs' Motion for Summary Judgment (Doc. 34) ("Response"), and Plaintiffs' Reply in support of summary judgment (Doc. 36) ("Reply").

**I.   Background**

This appeal involves the denial of a petition for permanent residency. Plaintiffs (and Florida residents) Martha Paez-Basto ("Paez-Basto"), a naturalized citizen of the United States, and Massimiliano Centanni ("Centanni"), an Italian citizen, have been married since 2006. (Doc. 6-1 at 1). Centanni initiated divorce proceedings in 2011. (Doc. 6-1 at 1). On July 6, 2013, the

parties executed a written Marital Settlement Agreement, which was docketed in the divorce case. (Doc. 6-3 at 3).

About two weeks later, Paez-Basto filed a Form I-130 (titled "Petition for Alien Relative") and Centanni filed a Form I-485 (titled "Application to Register Permanent Resident or Adjust Status") to enable Centanni to become a permanent resident of the United States. (Doc. 23 at 2). U.S. Citizenship and Immigration Services (USCIS) denied Paez-Basto's Form I-130 on November 27, 2013, which also resulted in the denial of Centanni's Form I-485. (Doc. 6-3 at 2). In denying the Form I-130, USCIS relied upon an earlier case -- *Matter of Lenning*, 17 I. & N. Dec. 476 (BIA 1980). The Plaintiffs argue that their situation was not the equivalent of the situation in *Lenning,* and therefore the denial of the Form I-130 was arbitrary and capricious, warranting summary judgment. (Doc. 23 at 1).

**II.    Standards**

Summary judgment is granted when the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P 56(a). The evidence is to be viewed in the light most favorable to the non-moving party. *Augusta Iron and Steel Works, Inc. v. Employers Ins. v. Wausau*, 835 F.2d 855, 856 (11th Cir. 1988).

However, even in the context of summary judgment, an agency action is entitled to great deference. *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th 1996). Under the Administrative Procedures Act, a court shall set aside an agency's action where it is arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard requires the court to consider whether an agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Sierra Club v. Johnson*, 436 F.3d 1269, 1273-74 (11th Cir.2006) (quotation omitted). Additionally, the Court must consider whether the agency has "articulate[d] a satisfactory

explanation for [its] action including a rational connection between the facts found and the choice made." *Shays v. Federal Election Com'n*, 414 F.3d 76, 97 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). The reviewing court is not to "conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Cobb's History*, 87 F.3d at 1246. Rather, the court will "decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." *Id.* (quotation omitted). In *Judulang v. Holder*, 132 S.Ct. 476, 490 (2011), an opinion considering the arbitrary and capricious nature of a Board of Immigration Appeals decision, Justice Kagan wrote, "[w]e must reverse an agency policy when we cannot discern a reason for it." In visa petition proceedings, the burden of proof to establish eligibility for benefits rests upon the petitioner. *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966).

**Analysis**

In denying Centanni's petition, USCIS relied primarily on *Matter of Lenning*, 17 I. & N. Dec. 476 (BIA 1980). In that case, a couple who had been married for five years sought to obtain permanent residency for the wife, a citizen of New Zealand.[1] About three weeks before filing their Form I-130 and Form I-485, the couple "entered into and executed a formal, written separation agreement in which they settled financial, property, and other rights between the parties."[2] *Id.* at 476. The separation agreement took effect before the wife's visa petition was filed; however, the couple's marriage had not been terminated at the time USCIS considered the petition. *Id.* Despite this, USCIS denied the visa petition, due to the existence of the separation agreement. *Id.*

---

[1] In *Lenning*, as in the instant case, there was no suggestion that the marriage was a sham – *i.e.*, one that had been entered into solely to circumvent immigration restrictions.

[2] Under the law of New York, where the couple had been wed and were residing, a couple could obtain a divorce by living apart for a year pursuant to such an agreement. *Id.* at 477-78.

In affirming the denial in *Lenning*, the Board of Immigration Appeals noted that the provisions of the Immigration and Nationality Act favoring visa applicants who were spouses of American citizens over other visa applicants were included "to prevent the separation of families and to preserve the family unit". *Id.* at 477 (citing H.R.Rep. No. 1365, 82d Cong., 2d Sess. 1680 (1952)). The Board had previously held that, in considering the visa applications of such spouses – and, in turn, whether the granting of a visa would further the policy of preventing separations and preserving family units – the agency was not properly authorized to consider the "viability" of an unterminated marriage. *See Matter of McKee*, 17 I. & N. 332 (BIA 1980) (adopting reasoning of *Chan v. Bell*, 464 F.Supp. 125 (D.D.C. 1978)). However, the Board found that the issues that led to the rejection of the "viability" standard did not exist with regard to the Lennings' unterminated marriage, because the separation agreement "renders the relationship of the parties as if they were not married at all". *Lenning* at 477.

Plaintiffs argue that *Chan* and *McKee* establish that only a "legal separation" will justify denial of an alien spouse's visa petition, and that they, although living apart, have never been legally separated. (Doc. 23 at 7).[3] However, the instant situation resembles that described in the *Lenning* decision. The Plaintiffs' Marital Settlement Agreement, which was entered into before the filing of the Form I-130 and the Form I-485, settles financial, property, and other rights between the couple. (Doc. 6-3 at 3). Moreover, unlike the couple in *Lenning*, Centanni and Paez-Basto had entered into formal dissolution proceedings long before those forms were filed.

The Plaintiffs argue that the effect of the Marital Settlement Agreement "is solely contingent upon the dissolution of the marriage" and "has no effect or power over the parties"

---

[3] The Plaintiffs assert, and the Defendants do not dispute, that Florida law does not recognize the concept of a "legal separation". (Doc. 23 at 8).

until that occurs.   (Doc. 23 at 8).   However, the Plaintiffs cite no legal authority or contractual language supporting these contentions.   To the contrary, the Marital Settlement Agreement provides that it may be offered into evidence in the dissolution proceedings and may be incorporated by reference into a final judgment in those proceedings, but that it will survive any judgment and be binding on the parties regardless of its incorporation.   (Doc. 34-2 at 16).   And rather than describing an agreement that is contingent on future events, the Marital Settlement Agreement announces that the parties "wish to settle between themselves, now and forever, their respective rights, duties, and obligations regarding property, liabilities, and child."   (Doc. 34-2 at 2).

While Florida family law may not formally recognize a legal separation in the same manner as New York, the facts of this case are analogous to those in *Lenning*. While "legal," the separation in *Lenning* was no more permanent or significant than that of the Plaintiffs here, and thus the rationale that supported denial in that case would also support a denial in the instant case.

Defendants relied on substantial evidence to support their decision. The explanation articulated by USCIS is rational and shows a connection between the facts and the choices made. Even assuming that USCIS committed error in relying upon *Lenning*, the Court cannot say that doing so was a "clear error in judgment" that would justify reversal.

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 23) filed by the Plaintiffs is **DENIED**.   And it is further

**ORDERED** that on or before October 6, 2014, the Plaintiffs shall **SHOW CAUSE** by written response, not to exceed five pages in length, why judgment should not be entered in favor

of the Defendants.   Should they wish to do so, he Defendants may file a five-page reply not more than a week after the response is filed.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 26, 2014.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party